## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, a foreign corporation,

                              CASE NO:

        Plaintiff,

vs.

LINCOLN BAUGH, CLIFTON BROWN, ORTNELL BROWN, FRANK CELIN, ARRY CHARLES, RONAL DELVA, GRANVILLE DICKSON, SHIRLEY DICKSON, MAGDALI ETIENNE, WILSON ETIENNE, MARIE EUGENE, JONAS GEORGE, HAMAD HASSAN, INSHAN HASSAN, ANTOINE MAGLOIRE, ROBERT MARTINEZ, WINSTON MCCALLA, ENIDE PIERRE, ROLLA PIERRE, ELICET PIERRELUS, ELIUS PIERRELUS, FILIUS PIERRELUS, JOHN MIRAN PUST, SHAWN ROBERTS, ALLAN SENAT, PAMELA STREFF, HEMANT SUKHOO, and GERARD RALPH UZICE,

        Defendants.               /

_____

## COMPLAINT FOR DECLARATORY RELIEF

American Guarantee Liability & Insurance Company ("American Guarantee") sues Lincoln Baugh, Clifton Brown, Ortnell Brown, Frank Celin, Arry Charles, Ronal Delva, Granville Dickson, Shirley Dickson, Magdali Etienne, Wilson Etienne, Marie Eugene, Jonas George, Hamad Hassan, Inshan Hassan, Antoine Magloire, Robert Martinez, Winston McCalla, Enide Pierre, Rolla Pierre, Elicet Pierrelus, Elius Pierrelus, Filius Pierrelus, John Miran Pust, Shawn Roberts, Allan Senat, Pamela Streff, Hemant Sukhoo, and Gerard Ralph Uzice (collectively "defendants") as follows:

**NATURE OF ACTION**

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §§2201 and 2202 for the purpose of determining an actual controversy between the parties.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1332.

3.      The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

4.      Venue is proper in the Southern District of Florida since the subject insurance policy incepted in this district.

5.      All conditions precedent to instituting this action have occurred, been performed, or have been waived.

**THE PARTIES**

6.      The plaintiff American Guarantee was at all relevant times an Illinois corporation with its principal place of business in New York.

7.      The defendant Lincoln Baugh was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

8.      The defendant Clifton Brown was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

9.      The defendant Ortnell Brown was at all relevant times a citizen of the State of Florida, residing in Miami-Dade County, Florida.

10.     The defendant Frank Celin was at all relevant times a citizen of the State of Florida.

11.     The defendant Arry Charles was at all relevant times a citizen of the State of Massachusetts.

12.     The defendant Ronal Delva was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

13.     The defendant Granville Dickson was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

14.     The defendant Shirley Dickson was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

15.     The defendant Magdali Etienne was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

16.     The defendant Wilson Etienne was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

17.     The defendant Marie Eugene was at all relevant times a citizen of the State of Florida, residing in Miami-Dade County, Florida.

18.     The defendant Jonas George was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

19.     The defendant Hamad Hassan was at all relevant times a citizen of the State of New York.

20.     The defendant Inshan Hassan was at all relevant times a citizen of the State of New York.

21.     The defendant Antoine Magloire was at all relevant times a citizen of the State of Florida, residing in Palm Beach County, Florida.

22.     The defendant Robert Martinez was at all relevant times a citizen of the State of Florida, residing in St. Lucie County, Florida.

14470127v1  158

23.     The defendant Winston McCalla was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

24.     The defendant Enide Pierre was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

25.     The defendant Rolla Pierre was at all relevant times a citizen of the State of Florida, residing in Marion County, Florida.

26.     The defendant Elicet Pierrelus was at all relevant times a citizen of the State of Florida, residing in Martin County, Florida.

27.     The defendant Elius Pierrelus was at all relevant times a citizen of the State of Florida, residing in Martin County, Florida.

28.     The defendant Filius Pierrelus was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

29.     The defendant John Miran Pust was at all relevant times a citizen of the State of Florida, residing in Palm Beach County, Florida.

30.     The defendant Shawn Roberts was at all relevant times a citizen of the State of Florida, residing in Miami-Dade County, Florida.

31.     The defendant Allan Senat was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

32.     The defendant Pamela Streff was at all relevant times a citizen of the State of Florida, residing in Palm Beach County, Florida.

33.     The defendant Hemant Sukhoo was at all relevant times a citizen of the State of Florida, residing in Broward County, Florida.

4

34.    The defendant Gerard Ralph Uzice was at all relevant times a citizen of the State of Florida, residing in Miami-Dade County, Florida.

## COMMON ALLEGATIONS

35.    Patricia De Pons ("DePons") was at all relevant times an employee of Estime-Thompson, P.A. (the "firm").

36.    Marie Estime-Thompson ("Estime-Thompson") was at all relevant times an attorney and president of the firm.

37.    Ruben Thompson ("Thompson") was at all relevant times an attorney and vice president of the firm.

38.    Estime-Thompson and Thompson were the only individuals with signatory power on the firm's escrow account.

**The Madison County Property Sale**

39.    The firm entered into a retainer agreement with First Loan Solutions ("First Loan") on January 18, 2006.  A copy of the retainer is attached as Exhibit A.

40.    First Loan entered into a contract to purchase 1200 acres of property located in Madison County, Florida from John W. Cruce Trust and J. Adam Cruce Trust (collectively "Cruce Trust").  A copy of that purchase and sale agreement is attached as Exhibit B.  That original agreement provided for a January 9, 2006 closing date.

41.    The purchase and sale agreement was amended twice, once in March 2006 and again in May 2006.  The amendments are attached as Composite Exhibit C.  The May 2006 amendment provides that the last day to close is May 30, 2006.

42.    The March 2006 amendment provided for an additional non-refundable deposit by First Loan in the amount of $200,000.  *See* Exhibit C.

5

43.     In April 2006, Estime-Thompson P.A. wired $200,000 to the Cruce Trust's lawyers.  *See* Exhibit D.

44.     The May 2006 amendment provided for an additional non-refundable deposit by First Loan in the amount of $500,000.  *See* Exhibit C.

45.     In May 2006, Estime-Thompson P.A. wired $500,000 to the Cruce Trust's lawyers.  *See* Exhibit E.

46.     No closing ever took place on the Cruce Trust to First Loan sale and First Loan never took title to the 1200 acres in Madison County.

47.     On June 1, 2006, counsel for the Cruce Trust wrote to Thompson advising the deadline had passed for First Loan to close on the property and that all non-refundable deposits were distributed to the sellers.  A copy of that letter is attached as Exhibit F.

48.     From April 2006 through June 2006 and in also August 2006, Estime-Thompson's signature appears on HUD settlement statements for the sales of the Cruce Trust Madison County lots from First Loan to various end buyers.  These HUD statements are attached as Composite Exhibit G.

49.     Estime-Thompson, Thompson, the firm, and DePons knew when these HUD settlement statements were executed that First Loan did not have title to the property it was purportedly selling to the end buyers.

50.     End buyers deposited money into the firm's escrow account for these Madison County lots.

51.     The firm disbursed some or all of the end buyer's monies to First Loan and/or the lawyers for the Cruce Trust in connection with these "false closings" taking place in early to mid-2006, prior to the policy inception date of October 6, 2006.

6

**Demands Against The Firm, Estime-Thompson, and Thompson**

52.     On May 26, 2006, attorney Robert A. Brandt wrote to De Pons and the firm on behalf of seller Arik Maller regarding a purchase and sale of property in Davie, Florida.  A copy of the letter is attached as Exhibit H.  The letter identifies that the closing date has passed and demands return of the deposit as liquidated damages.

53.     On June 1, 2006, attorney James Jean-Francois wrote to the firm regarding Isabelle Daniel and Rose Laure Mathieu, which identifies a January 26, 2006 closing and the failure to provide an executed warranty deed, title commitment, or title policy.  A copy of the letter is attached as Exhibit I.  The letter threatens legal action if the requested materials are not provided.

54.     On July 11, 2006, attorney James Jean-Francois wrote to Estime-Thompson, referencing his June 1, 2006 letter, stating Estime Thompson's office promised to deliver the requested materials, and again threatening legal action.  A copy of the letter is attached as Exhibit J.

55.     The same date, attorney Jean-Francois wrote to Estime-Thompson on behalf of clients Arlette Cayard and Jean Cayard, referencing a May 11, 2006 closing.  A copy of the letter and related documents are attached as Exhibit K.  The attorney demands provision of the warranty deed, title commitment, and title policy and threatens legal action if the materials are not provided.

56.     On August 14, 2006, attorney Stanley B. Lewis wrote to the firm regarding the following individuals: Eli DuFrene, Paulemy Senat, Roland Sinepha, and Jean Clermont.  A copy of the letter is attached as Exhibit L.  In the letter attorney Lewis identifies he communicated with the firm in February 2006, identifies his clients' concerns regarding the property purchases

and advises his clients may consider taking legal action.  Attorney Lewis followed upon on October 2, 2006.  A copy of that letter is attached as Exhibit M.

57.     In total nine people threatened legal action against the firm prior to the policy inception date of October 6, 2006.

**The American Guarantee Policy of Insurance**

58.     American Guarantee issued a lawyer's professional liability insurance policy to the firm for the period October 6, 2006 to October 6, 2007.  A copy of the policy is attached as Exhibit N.

59.     The insuring agreement of the policy provides as follows:

I.     **INSURING AGREEMENT**

    A.     **COVERAGE**

> The Company will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the deductible shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both made and reported to the **Company** during the **Policy Period** or any extended reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others.   . . . :

60.     The policy also contains the following condition:

V.     **CONDITIONS**

> . . .

    J.     **APPLICATION**

> By acceptance of this policy, all **Insureds** reaffirm as of the effective date of this policy that:

> 1.     the statements in the application(s) and any attachment(s) attached hereto and made a part hereof, and all information communicated by the **Insureds** to the **Company**, either oral or written or electronically submitted, are true and accurate, are specifically incorporated herein, and are all

8

            **Insureds'** agreements, personal representations and warranties; and

2.     all such communicated information shall be deemed material to the **Company's** issuance of this policy; and

3.     this policy is issued in reliance upon the truth and accuracy of such representations; and

4.     this policy embodies all agreements existing between the **Insureds** and the **Company**, or any of its agents, relating to this insurance; and

5.     if any representation is false or misleading, this policy shall be void *ab initio*.

61.     The policy includes the following definitions:

**VI.**     **DEFINITIONS**

   **A.**     **CLAIM** means a demand for money or **Legal Services.**

* * *

   **E.**     **DAMAGES** means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the **Company**. **Damages** do not include:

1.     compensation for bodily injury to, sickness, disease, death of any person, emotional distress or other emotional judgments or awards;

2.     compensation for injury to or destruction of tangible property or loss of use or value thereof;

3.     personal profit or advantage to which the **Insured** was not legally entitled;

4.     criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;

5.     punitive, exemplary or multiple damages;

6.     matters deemed uninsurable;

9

7.      legal fees, costs and expenses paid to or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of the foregoing; or

8.      any form of equitable or non-monetary relief.

* * *

62.      On October 6, 2006, Estime-Thompson signed an application for insurance for the firm, listing herself and Ruben T. Thompson as attorneys in the firm.  A copy of the Application is attached as Exhibit O.  In response to question 1 on the application, Estime-Thompson identified herself and Ruben T. Thompson as the only lawyers in the firm.

63.      Estime-Thompson responded "no" to the following question:

3. c.      During the past five (5) years, has any professional liability claim or suit been made against any attorney named in Question 1 OR is any attorney named in Question 1 aware of any circumstances, incidents, acts, errors, or omissions which could result in a professional liability claim against the firm, any attorney of the firm, or its predecessors?  If YES, provide full details on a Supplemental Claim Information form.

64.      The application also contains the following language:

Notice to Applicant – Please read carefully

The applicant represents that the above statements and facts are true and that no material facts have been suppressed or misstated.  Applicant acknowledges a continuing obligation to report to the Company as soon as practicable any material changes in the facts and statements above, and in each supplemental application, of which applicant becomes aware after signing the application.

I/We understand and accept that the policy applied for provides coverage on a "claims-made and reported" basis for only those claims which are made against the Insured while the policy is in force and coverage ceases with the termination of the policy unless I/We exercise the options available and in accordance with the terms of the policy.  Applicant's acceptance of Company's quotation is required and prior to binding coverage and policy issuance, it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to the policy.

10

* * *

NOTICE:

Failure to report the following to your current insurance company BEFORE policy expiration may create a lack of coverage:
1.      Any claim made against you during your current policy term; or
2.      Any facts, circumstances or events which may give rise to a claim.

65.      As part of the Application, Estime-Thompson signed the Claim Supplemental Application form provided by American Guarantee but did not identify any claims or potential claims.  *See* Exhibit O.

**Defendants' Lawsuit against the Firm, Estime-Thompson and Thompson**

66.      The defendants sued the firm, Estime-Thompson and Thompson on November 26, 2008.  A copy of the amended complaint ("defendants' complaint") is attached as Exhibit P.

67.      In their suit, the defendants alleged claims of breach of escrow duties and breach of fiduciary duty. *See* Exhibit P.

68.      The defendants alleged the firm, Estime-Thompson and Thompson accepted escrow deposits, failed to keep proper records, improperly disbursed those funds without authorization including disbursement to the Cruce Trust for a sale that never occurred and disbursement to a real estate broker when no closings occurred, disbursed escrow funds to other individuals who did not deposit funds into the escrow account, and failed to return the funds upon demand. *See* Exhibit P at ¶¶33-41.  The complaint is premised in failed vacant land contracts between First Loan and the defendants for properties in Madison, Taylor and Columbia Counties, Florida. *See* Exhibit P at ¶¶31, 32, 35, 36.  At least some of the defendants had contracts regarding the same Madison County property that was the subject of the Cruce to First Loan failed real estate deal. *See* Exhibit P at ¶¶36.

11

69.     On October 23, 2009, the defendants, the firm, Estime-Thompson and Thompson entered into a stipulation for settlement and entry of consent final judgment. A copy of the stipulation is attached as Exhibit Q.

70.     On November 17, 2009, the court entered a consent final judgment against the firm, Estime-Thompson and Thompson in the amount of $516,141.78 consisting of $245,461.85 in principal, $57,996.25 in prejudgment interest, $41,874.78 in costs and $170,808.25 in attorney's fees.  A copy of the consent final judgment is attached as Exhibit R.

71.     The defendants have since attempted to garnish the American Guarantee policy proceeds based upon the consent final judgment.  On November 17, 2009, the defendants filed an *ex parte* motion for writ of garnishment against American Guarantee as to the $516,141.78 judgment.  *See* Motion attached as Exhibit S.

72.     American Guarantee opposed the writ based upon this Court's September 2008 decision rescinding the policy, the Eleventh Circuit's June 2009 decision affirming the rescission, and Florida's nonjoinder statute, Fla. Stat. §627.4136(1), (4), which prohibits the defendants' actions.

**Prior Federal Decision Rescinding Policy**

73.     On June 6, 2008, American Guarantee filed a complaint for rescission based upon Estime-Thompson's misrepresentation in the application for insurance, Case No. 08-212626 – civ-Ungaro.

74.     This court entered default against all named defendants on September 16, 2009 and final default judgment on September 29, 2009.  Copies of the order and final judgment are attached as Exhibit T.

75.     The defendants as well as two other individuals (the Cascoes) sought to intervene in that lawsuit.  Their motions to intervene were denied in the September 16, 2009 order and that denial was affirmed on appeal.  The appellate decision was issued June 10, 2009. A copy of the decision is attached as Exhibit U.

76.     In that decision, the Eleventh Circuit stated: "A declaratory judgment against Estime-Thompson does not impair <u>the Cascoes'</u> ability to litigate whether the misdeeds of Estime-Thompson were covered under the insurance policy issued by American Guarantee." *See* Exhibit W at p. 8.  The plain language of the decision makes it clear, the Court considered the Delva claimants bound by the rescission.

77.     To American Guarantee's knowledge, none of the named defendants here held a judgment against Estime-Thompson, the firm, or Thompson prior to the policy being rescinded. In fact, to American Guarantee's knowledge, none of the named defendants filed suit against the firm, Estime-Thompson or Thompson until after the federal district court rescinded the policy.

**Defense of Suits and Claims**

78.     Thompson, Estime-Thompson and the firm requested a defense and indemnity under the American Guarantee policy for the defendants' lawsuit and for the other demands identified above.

79.     American Guarantee defended the firm and Estime-Thompson in the defendants' lawsuit pursuant to a full reservation of rights up through the Eleventh Circuit's June 10, 2009 affirmance of the rescission action.  Counsel retained by American Guarantee to defend that action did not withdraw until August 27, 2009.

80.     In this action, American Guarantee seeks statutory and contractual rescission of the policy.  American Guarantee also seeks a declaration that it has no duty to defend or

13

indemnify the firm or Estime-Thompson in the defendants' litigation.   Finally, American Guarantee seeks a declaration that it has no duty to pay the defendants' consent final judgment against the firm, Estime-Thompson and Thompson.

## Count I –No Coverage Based Upon Prior Statutory Rescission

81.   American Guarantee incorporates by reference paragraphs 1 through 80 as paragraph 81 of Count I.

82.   Estime-Thompson's misrepresentations in the application were material to American Guarantee's decision to enter into the insurance contract with the firm.

83.   If Estime-Thompson had accurately completed the application and American Guarantee had known the truth, American Guarantee would not have entered into the insurance contract, would have entered into the contract at a higher premium, or would have entered into the contract under different terms.

84.   Accordingly, pursuant to §627.409, Fla. Stat., American Guarantee is entitled to rescind the insurance policy issued to the firm.

85.   In view of the foregoing, this Court has the power to declare the rights and liabilities of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, American Guarantee respectfully requests this Court:

a.   Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

b.   Find and declare American Guarantee has no duty to pay the judgment the defendants hold against the firm, Thompson and Estime-Thompson; and

14470127v1  158

c.      Grant American Guarantee the costs of this action and such other and further relief as this Court deems equitable, just and proper under the evidence and circumstances of this proceeding.

## Count II – No Coverage Based Upon Prior Contractual Rescission

86.     American Guarantee incorporates by reference paragraphs 1 through 80 as paragraph 86 of Count II.

87.     Estime-Thompson's misrepresentations in the application were material to American Guarantee's decision to enter into an insurance contract with the firm.

88.     If Estime-Thompson had accurately completed the application and American Guarantee had known the truth, American Guarantee would not have entered into the insurance contract, would have entered into the contract at a higher premium, or would have entered into the contract under different terms.

89.     Accordingly, based on Section V., J., the policy is void *ab initio* because her answers in the application were false and misleading.

WHEREFORE, American Guarantee respectfully requests this Court:

a.      Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

b.       Find and declare American Guarantee has no duty to pay the judgment the defendants hold against the firm, Thompson and Estime-Thompson; and

c.      Grant American Guarantee the costs of this action and such other and further relief as this Court deems equitable, just and proper under the evidence and circumstances of this proceeding.

15

**Count III – the American Guarantee Policy Does Not Afford Coverage
for the Defendants' Lawsuit Due to Misrepresentations in the Application
for Insurance and Breach of the Policy's Representation Provision**

90.    American Guarantee realleges paragraphs 1 through 80 as paragraph 90 of Count III.

91.    The additional terms and conditions section of the American Guarantee policy provides, in part, (a) the insureds reaffirms as of the effective date of the policy, that all statements in the application are part of the policy, and are true and accurate; (b) the information communicated from the insureds to American Guarantee are material to the issuance of the policy, (c) the policy is issued in reliance upon the truth and accuracy of the information contained in the application, and (d) a false or misleading representation in the application shall void the policy *ab initio. See* Policy V.J.

92.    Estime-Thompson represented in the application for insurance that no professional liability claim or suit had been made against her or Thompson and that neither she nor Thompson was aware "of any circumstances, incidents, acts, errors, or omissions which could result in a professional liability claim against the firm [or] any attorney of the firm. . . ." *See* Application Q. 3.c.

93.    The application provides, in part, that Estime-Thompson, as the signature, represents the statements and facts set forth in the application "are true and that no material facts have been suppressed or misstated." *See* Application, Notice to Applicant.

94.    The application further provides, that Estime-Thompson, as signatory, acknowledges a "continuing obligation to report" to American Guarantee "any material changes in the facts and statements" provided in the application. *See* Application, Notice to Applicant.

95.    The American Guarantee policy does not afford coverage as a result of the firm's, Estime-Thompson's and Thompson's breach of the policy's representation provision, including

16

but not limited to, their failure to disclose the false closings and disbursements of funds, the failure of the Cruce Trust – First Loan sale, and the demands against the firm, Estime-Thompson and Thompson which preceded the policy inception date.

96.    The American Guarantee policy does not afford coverage as a result of Estime-Thompson's misrepresentation in the application for insurance, including, but not limited to, her failure to disclose to American Guarantee false closings and disbursements of funds, the failure of the Cruce Trust – First Loan sale, and the demands against the firm, Estime-Thompson and Thompson which preceded the policy inception date.

97.    In view of the foregoing, an actual controversy exists between the parties and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

Wherefore, American Guarantee & Liability Insurance Company, requests this Court to:

a.    take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

b.    find and declare that American Guarantee has neither a duty to defend nor indemnify the firm, Thompson or Estime-Thompson for the defendants' lawsuit;

c.    find and declare that American Guarantee has no duty to pay the consent final judgment entered against the firm, Thompson and Estime-Thompson in the defendants' lawsuit;

d.    grant American Guarantee such other relief as this court deems fit and proper under the evidence and circumstances.

17

**Count IV – In The Alternative, The American Guarantee Policy Does Not Afford Coverage for the Defendants' Lawsuit Virtue of the Insured's Prior Knowledge of a Potential Claim**

98.     American Guarantee realleges paragraphs 1 through 80 as paragraph 98 of count IV.

99.     The American Guarantee policy contains the following provision:

**I.      INSURING AGREEMENT**

    **A.      COVERAGE**

The Company will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the deductible shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both made and reported to the **Company** during the **Policy Period** or any extended reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others. It is a condition precedent to coverage under this policy that the act or omission occurred:

* * *

2.      prior to the **Policy Period**, provided that all of the following four conditions are met:

* * *

b)      prior to the inception date of the first policy issued by the **Company** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

c)      prior to the date any **Insured** first became a member or employee of the **Named Insured**, such **Insured** had no basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured** . . . .

100.    The American Guarantee policy does not afford coverage for the defendants' lawsuit because the firm, Estime-Thompson, or Thompson had a basis to believe that they had

breached a professional duty or had a basis to foresee their acts or omissions might reasonably be expected to be the basis of a claim against them.

101.    In view of the foregoing, an actual controversy exists between the parties as the American Guarantee policy does not provide coverage, and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

Wherefore, American Guarantee & Liability Insurance Company, requests this Court to:

a.      take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

b.      find and declare that American Guarantee has neither a duty to defend nor indemnify the firm, Thompson or Estime-Thompson for the defendants' lawsuit;

c.      find and declare that American Guarantee has no duty to pay the judgment the defendants hold against the firm, Thompson and Estime-Thompson; and

d.      grant American Guarantee such other relief as this court deems fit and proper under the evidence and circumstances.

**Count V – In the Alternative, There is No Coverage for the Defendants' Lawsuit Which Seeks Damages Outside the American Guarantee Policy Definition of Damages**

102.    American Guarantee realleges paragraphs 1 through 80 as paragraph 102 of count V.

103.    The American Guarantee policy limits coverage to "damages" which is defined as follows:

E.      **DAMAGES** means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the Company.  Damages do not include:

* * *

19

2.  compensation for injury to or destruction of tangible property or loss of use or value thereof;

3.  personal profit or advantage to which the Insured was not legally entitled;

4.  criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;

5.  punitive, exemplary or multiple damages;

6.  matters deemed uninsurable;

7.  legal fees, costs and expenses paid to or incurred or charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of the foregoing; or

8.  any form of equitable or non-monetary relief.

104.  The defendants seek the following damages: court costs, attorney fees, disgorgement of money paid to the firm's escrow account as deposits on failed land purchases as well as their attorneys fees, court costs, and prejudgment interest. *See* consent final judgment at p. 12-14.

105.  In view of the foregoing, an actual controversy exists between the parties as the American Guarantee policy does not provide coverage for the damages sought by and awarded to the defendants, and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

Wherefore, the Plaintiff, American Guarantee & Liability Insurance Company, requests this Court to:

a.  take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

b.      find and declare that American Guarantee has no duty to indemnify the firm, Thompson, or Estime-Thompson for the defendants final judgment;

c.      find and declare that American Guarantee has no duty to pay the defendants final judgment against the firm, Thompson, and Estime-Thompson; and

d.      grant American Guarantee such other relief as this court deems fit and proper under the evidence and circumstances.

### Count VI – In the Alternative, There is No Coverage for the Claims Involving Taylor County and Columbia County Properties <u>as No Claim was Made and Reported Within the Policy Period</u>

106.    American Guarantee realleges paragraphs 1 through 80 as paragraph 106 of count V.

107.    The American Guarantee policy limits coverage to claims made against the insured and reported to American Guarantee within the policy period. *See* Policy I.A.  The policy further contains the following language: "This is a Claims Made and Reported Policy.  . . .  The policy is limited to liability for only those **Claims** that are first made against the **Insured** and reported to the **Company** during the **Policy Period.**" *See* Policy Declarations Page.  The policy period ran from October 6, 2006 to October 6, 2007. *See* Policy Declarations Page.

108.    The policy defines "claim" as a "demand for money of **Legal Services**." *See* Policy VI.A.

109.    The policy also contains the following provision:

### II.     LIMIT OF LIABILITY AND DEDUCTIBLE

* * *

### C.     MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

The inclusion of more than one **Insured** in an **Claim**, or the making of **Claims** by more than one person or entity shall not increase the Company's limit of liability or the deductible.  Two or

21

more **Claims** arising out of a single act or omission, or **Related Acts or Omissions** shall be treated as a single **Claim**. All such **Claims**, whenever made, shall be considered first made during the **Policy Period** in which the earliest **Claim** was first reported.

110.    The American Guarantee policy does not afford coverage for claims regarding property located in Taylor County, Florida or Columbia County, Florida, because no claim regarding properties in those counties was reported to American Guarantee during the policy period.

111.    In view of the foregoing, an actual controversy exists between the parties as the American Guarantee policy does not provide coverage for the damages sought by and awarded to the defendants, and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

Wherefore, the Plaintiff, American Guarantee & Liability Insurance Company, requests this Court to:

    a.    take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the American Guarantee policy;

    b.    find and declare that American Guarantee has no duty to indemnify the firm, Thompson, or Estime-Thompson for the defendants final judgment with respect to properties located in Taylor County or Columbia County, Florida;

    c.    find and declare that American Guarantee has no duty to pay the defendants final judgment against the firm, Thompson, and Estime-Thompson with respect to properties located in Taylor County or Columbia County, Florida; and

    d.    grant American Guarantee such other relief as this court deems fit and proper under the evidence and circumstances.

22

Dated:  June 10, 2010.

Respectfully submitted,

HINSHAW AND CULBERTSON LLP

s/Ronald L. Kammer
Ronald Kammer, Esq.
Florida Bar No. 360589
rkammer@hinshawlaw.com
Maureen G. Pearcy, Esq.
Florida Bar No. 57932
mpearcy@hinshawlaw.com
9155 South Dadeland Boulevard, Suite 1600
Miami, Florida 33156
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Attorneys for Plaintiff*

14470127v1  158